**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION**

IN RE

SABRINA D. KEOKUK                                                                   CASE NO. 17-30370

DEBTOR

**MEMORANDUM OPINION
AND ORDER**

The Debtor seeks confirmation of her Second Amended Chapter 13 Plan. [ECF No. 99.] 21st Mortgage Corporation, a secured creditor, argues that the Second Amended Plan does not comply with 11 U.S.C. § 1325(a)(5)(B).[1] [ECF No. 107.] The Objection is sustained, and confirmation of the Second Amended Plan is denied for the reasons set out herein.

**I.    FACTS.**

The Debtor filed for chapter 13 relief and scheduled real property at 1392 Baxter Ridge Road, Lawrenceburg, Kentucky ("Real Estate"), and a 2007 Giles mobile home located thereon ("Mobile Home"). [ECF No. 18.] 21st Mortgage filed Proof of Claim No. 7 for $87,531.45 based on a note that is secured by liens on the Real Estate and the Mobile Home. The liens are not disputed, and the Mobile Home is treated as personal property under Kentucky law.

**A.    The Debtor's Initial Plan.**

The Debtor initially proposed a plan that valued 21st Mortgage's secured claim at $20,000.00, payable in equal monthly installments at 5.25% interest. [ECF No. 19.] 21st Mortgage objected to the proposed cram down value [ECF No. 30] and a hearing was scheduled

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

1

to determine the amount of the secured claim pursuant to § 506(a).  [ECF Nos. 55 and 59.]  The parties agreed before the hearing, and it was therefore ordered, that "the value of the [Mobile Home] is $36,000.00 and the value of the [Real Estate] is $22,500.00 for a total value of $58,500.00."  [ECF No. 67 ("Agreed § 506(a) Valuation Order").]

      **B.**      **The Debtor's First Amended Plan.**

The Debtor then filed its First Amended Plan.  [ECF No. 72.]  Instead of merely adjusting the initial secured value to the agreed secured value, the Debtor proposed to: (i) retain the Real Estate in exchange for equal monthly payments that total the agreed value of the Real Estate pursuant to § 1325(a)(5)(B) ($22,500.00); and (ii) surrender the Mobile Home pursuant to § 1325(a)(5)(C).  [*Id.*]  Confirmation was denied because the First Amended Plan did not pay 21st Mortgage the value of its allowed secured claim as required by § 1325(a)(5)(B).  [ECF No. 94 at 6-7.]

The proposal did not work because the Debtor was not entitled to immediately reduce the total amount of the allowed secured claim payable in subpart (B)(ii) by the § 506(a) value of surrendered property.  Surrender of the Mobile Home pursuant to § 1325(a)(5)(C) is not the equivalent of a distribution of value in payment of the allowed secured claim.  [ECF No. 94.]  *See also In re Tosi*, 546 B.R. 487, 492 (Bankr. D. Mass. 2016) (surrender pursuant to § 1325(a)(5)(C) means the debtor will make the collateral available to the secured creditor so the secured creditor can exercise its state law rights); *In re Williams*, 542 B.R. 514, 518 (Bankr. D. Kan. 2015) (surrender does not transfer ownership); *In re Rose*, 512 B.R. 790, 793 (Bankr. W.D. N.C. 2014) (surrender does not transfer title or require a lender to foreclose on its mortgage).

The conclusion that the First Amended Plan failed under subpart (B) eliminated the need to decide if a plan could address an allowed secured claim under both subparts (B) and (C).  [*But*

2

*see* ECF No. 94 at 6 (the plain language of the statute means it is unlikely a debtor may elect both subparts (B) and (C)).] The order denying confirmation also rejected the Debtor's alternative reading of the Amended Plan to treat surrender of the Mobile Home as a distribution under subpart (B) instead of a surrender under subpart (C). [*Id.* at 7-8.] The Amended Plan did not reflect this structure and the proposal would require the detailed analysis conducted in this Opinion. The Debtor was ordered to amend her plan to accurately reflect her intention, which she attempted to do in the Second Amended Plan. [*Id.*]

  C. **The Debtor's Second Amended Plan.**

The Debtor timely filed a Second Amended Plan on December 31, 2018. [ECF No. 99.] The Second Amended Plan proposes the following for the 21st Mortgage claim:

## II. SECURED CLAIMS.

### A. Secured Claims To Be Paid Through the Plan and Motion to Value Collateral.

**2. Secured Claims Valued Under § 506.** The Debtor moves the Court to value collateral as follows according to 11 U.S.C. § 506(a). Each of the following secured claims, if allowed, shall be paid through the plan until the secured value or the amount of the claim, whichever is less, has been paid in full. Any remaining portion of the allowed claim shall be treated as a general unsecured claim. Any claim with a secured value of $0 shall be treated as a general unsecured claim.

| Secured Creditor | Collateral Description | Estimated Amount of Claim | Secured Value | Interest Rate* | Monthly Payment |
|---|---|---|---|---|---|
| 21st Mortgage Corporation (See VII B. Special Provisions) | 2007 Giles mobile home | $87,500.00 | $36,000.00 | 0.00% | $0.00 |
| 21st Mortgage Corporation | 1392 Baxter Ridge Rd. Lawrenceburg, Kentucky 2 acre lot | $87,500.00 | $22,500.00 | 5.25% | $471.61 |

### VII. SPECIAL PROVISIONS.

**B.** The Debtor proposes the following special provisions: The claim of 21st Mortgage Corporation, subject to valuation under 506, will be treated by $22,500.00, plus interest, of secured value being paid through the plan. The remaining $36,000 of secured value will be satisfied by the transfer of the 2007 Giles mobile home, which Creditor has a security interest. These agreed upon values are consistent with Creditor's own appraisals ( Documents #90 and #91).

The Debtor's Memorandum attached to the Second Amended Plan explains that the Debtor is modifying 21st Mortgage's rights because the claim is not secured entirely by real

3

estate that is the Debtor's principal residence. [ECF No. 99-1.] *See also* 11 U.S.C. § 1322(b)(2) (allowing modification). The proposed plan values the Real Estate and Mobile Home at $58,500.00 based on two December 2017 appraisals prepared for 21st Mortgage. [*See* ECF No. 99-1 at 2; *see also* ECF Nos. 90 and 91.] The appraised values are also the basis for the Agreed § 506(a) Valuation Order.

The Debtor describes the proposed treatment of the 21st Mortgage allowed secured claim as follows:

> Specifically, the Debtor's amended chapter 13 plan proposes to pay 21st Mortgage $22,500.00 in monthly plan payments at the rate of $471.61, plus 5.25% interest. [Docket No. 99]. In addition, in the Special Provisions section of the amended plan the Debtor proposes to transfer to 21st Mortgage possession of the 2007 Giles manufactured home valued by 21st Mortgage's appraiser at $36,000.00. [Docket No. 99]. Collectively, 21st Mortgage is receiving "property distributed under the plan" in the full amount of the secured portion of its claim of $58,500.00 as of the effective date of the plan.

[ECF No. 99-1 at 2 (footnote omitted).] The plan does not disclose whether the Debtor intends to transfer title to the Mobile Home or just possession. The Debtor indicated at the confirmation hearing that she is willing to transfer title to the Mobile Home to effectuate a distribution under § 1325(a)(5)(B).

21st Mortgage objects. [ECF No. 107.] It argues that § 1325(a)(5)(B)(ii) does not allow satisfaction of an allowed secured claim with non-cash property. [*Id.* at 2.] 21st Mortgage also argues that the valuation agreed on by the parties does not contemplate ownership costs, such as insurance and taxes, and distribution expenses, such as a commission or the cost of removal. [*Id.* at 3.]

The Chapter 13 Trustee does not recommend confirmation. [ECF No. 101.] The Trustee sees a conflict because Section II.A.2 implies the Debtor will retain the Mobile Home, which

4

requires periodic payments, while Section VII.B indicates the Debtor will transfer the Mobile Home to 21st Mortgage. The Trustee asks the Debtor to "[a]mend the plan to clarify whether the debtor intends to pay the secured value of the claim at $36,000.00, as provided in section II.A.2, or surrender the collateral as stated in the special provision." [*Id.*]

A confirmation hearing on the Second Amended Plan was held on February 21, 2019, and the matter was submitted for a decision.

## II.    DISCUSSION.

The broad question in this case is whether the Debtor's proposed plan is confirmable pursuant to § 1325(a)(5)(B). More specifically, may the Debtor propose a chapter 13 plan that pays part of the allowed secured claim of 21st Mortgage with property, *i.e.*, the Mobile Home, and the balance with deferred cash payments? The Debtor may propose such a plan, provided the deferred cash payments equal the total allowed secured claim less the value of the property distributed at confirmation.

The Debtor's plan assigns a value of $36,000.00 to the Mobile Home, which represents the § 506(a)(2) value. This price is too high based on information available in the record. Section 506(a)(2) sets the value of the allowed secured claim; it does not address the value of property that is used to pay that allowed secured claim. The value of the Mobile Home as property distributed to pay the allowed secured claim pursuant to § 1325(a)(5)(B)(ii) is less than the § 506(a)(2) value.

Therefore, the Second Amended Plan does not distribute property at least equal to the value of the allowed secured claim as required by § 1325(a)(5)(B)(ii) and is not confirmable.

**A. The Second Amended Plan Is an Attempt to Comply with § 1325(a)(5)(B).**

    **1. A Debtor May Alter a Mortgagee's Rights Under § 1322(b), Provided the Plan Complies with § 1325(a)(5).**

Section 1322(a) sets out the terms required in a chapter 13 plan and § 1322(b) describes provisions the plan may contain. 11 U.S.C. § 1322(a) and (b). Section 1325(a) directs a court to confirm a plan if the plan addresses the requirements therein. 11 U.S.C. § 1325. A plan that does not conform to these requirements is not confirmable.

The relationship between the Debtor and 21st Mortgage is defined by the terms of the note and security documents. Section 1322(b)(2) allows the Debtor to modify the terms of these agreements. 11 U.S.C. § 1322(b)(2). Section 1322(b)(2) does not describe the permitted modifications, but the outer limits of any modifications are set by the confirmation requirements of § 1325(a)(5). *See In re Hill,* No. 06-50972, 2007 WL 2021897, at *10 (Bankr. E.D. Tenn. July 6, 2007) (section 1322(b)(2) expressly gives a debtor the ability to modify a secured claim with § 1325(a) providing the permissible limits on such modification); *In re Catlin,* 81 B.R. 522, 525 (Bankr. D. Minn. 1987) (section 1322(b)(2) and § 1325(a)(5) serve different purposes but are complementary in nature); *see also* HON. W. HOMER DRAKE, JR., HON. PAUL W. BONAPFEL, ADAM GOODMAN, CHAPTER 13 PRACTICE & PROCEDURE § 5:19 (2018); 8 COLLIER ON BANKRUPTCY ¶ 1322.06[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2018).

Section 1325(a)(5) provides that a court shall confirm a plan if, with respect to each allowed secured claim provided for by the plan-

    (A) the holder of such claim has accepted the plan;

    (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

> > (ii) the value, as of the effective date of the plan, of property to be distributed under the plan because of such claim is not less than the allowed amount of such claim; and
>
> > (iii) if –
>
> > > (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> > > (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>
> > (C) the debtor surrenders the property securing such claim to such holder[.]

11 U.S.C. § 1325(a)(5)(A)-(C).

Section 1325(a)(5)(A) recognizes that a creditor and debtor may agree on a proposed treatment of an allowed secured claim. If there is no agreement, then a debtor has two choices: (1) pay the value of the secured claim pursuant to § 1325(a)(5)(B); or (2) surrender the collateral under § 1325(a)(5)(C). *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 957 (1997). 21st Mortgage does not agree to the proposed treatment, so the Debtor must prove compliance with subparts (B) or (C) to confirm her plan.

### 2. The Second Amended Plan Is a Satisfactory Attempt to Comply with § 1325(a)(5)(B).

The Second Amended Plan lists the Mobile Home and the Real Estate on separate lines in Section II.A.2 of the local form plan. Section II.A.2 addresses requests to treat allowed secured claims under the cram down option in § 1325(a)(5)(B). Pursuant to this section, the Debtor may retain collateral over an objection if 21st Mortgage retains its lien and receives value at least equal to the amount of the lender's allowed secured claim. 11 U.S.C. § 1325(a)(5)(B)(i) and (ii);

*Rash*, 520 U.S. at 957. Equal payments are required if the value is in the form of periodic payments based on the present value of the secured claim. 11 U.S.C. § 1325(a)(5)(B)(iii).

Section II.A.2 of the Second Amended Plan indicates the Debtor will retain the Real Estate and make periodic payments with interest. This is the typical cram down scenario contemplated by § 1325(a)(5)(B). Read literally, Section II.A.2 also indicates the Debtor will retain the Mobile Home, but make no periodic payments based on the present value listed. This is not a typical cram down proposal and belies the Debtor's true goal.

The Special Provision in Section VII.B of the Second Amended Plan, the Memorandum attached thereto, and the Debtor's arguments, explain the Debtor's actual proposal. Instead of paying the entire $58,500.00 allowed secured claim with periodic cash payments, the Debtor intends to treat the Mobile Home as "property to be distributed under the plan" pursuant to § 1325(a)(5)(B)(ii). Section VII.B explains that "$36,000.00 of secured value will be satisfied by the transfer of the 2007 Giles mobile home, [in] which Creditor has a security interest." [ECF No. 99 at 4.] The Debtor believes using the Mobile Home as payment will reduce the allowed secured claim to $22,500.00, which is then paid in equal monthly installments with interest over the life of the plan under Section II.A.2.

The First Amended Plan was rejected because it did not accurately describe the Debtor's proposal. Here, the placement of the terms in the Second Amended Plan is not optimal. But all parties understand the Debtor's proposal is an attempt to comply with § 1325(a)(5)(B). Also, the subsequent review confirms the Second Amended Plan is not confirmable. Therefore, forcing the Debtor to submit a revised plan before ruling, only to deny it, makes no sense.

The Debtor must satisfy subparts (i), (ii), and (iii) of § 1325(a)(5)(B) to allow confirmation. Subpart (iii) is not an issue in this case because the deferred cash payments meet

8

the requirements. The following discussion focuses on compliance with subparts (i) and (ii) and concludes the Debtor has not offered to distribute enough property to pay the allowed secured claim of 21st Mortgage, so the Debtor's proposal fails under § 1325(a)(5)(B)(ii).

### B. The Second Amended Plan Satisfies § 1325(a)(5)(B)(i).

Subpart (B)(i) of § 1325(a)(5) allows confirmation if the creditor retains the liens securing the allowed claim until payment in full or discharge. The parties were asked to consider whether a distribution of part of the collateral without paying the claim in full would eliminate the lien on the Mobile Home through the doctrine of merger. *See, e.g., In re May*, 10 F. Supp. 829, 831 (E.D. Ky. 1935) (merger with the fee interest eliminates the lien); *London Bank & Trust Co. v. Am. Fid. Trust Co.*, 697 S.W.2d 956, 957 (Ky. Ct. App. 1985) (same). The concern is loss of the creditor's state law lien rights. *Cf. In re Rose*, 512 B.R. 790, 795-96 (Bankr. W.D. N.C. 2014) (discussing the possible "Pandora's Box" of consequences if a lender is forced to assume title to property under § 1325(a)(5)(C).)

A court in Kentucky will not recognize a merger of two estates if there is a contrary intent or equity does not support enforcement. *May,* 10 F. Supp. at 831; *see also London Bank & Trust Co.,* 697 S.W.2d at 957 (there must be an intent to merge). Therefore, a carefully drafted plan that preserves the creditor's lien rights and disavows merger should comply with § 1325(a)(5)(B)(i).

### C. The Second Amended Plan Can Satisfy § 1325(a)(5)(B)(ii) by Distributing Non-Cash Property.

#### 1. Subpart (B)(ii) Requires Consideration of the Property Distributed, Its Value, and the Allowed Secured Claim.

Under subpart (B)(ii), the chapter 13 plan must provide that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less

than the allowed amount of such claim … ." 11 U.S.C. § 1325(a)(5)(B)(ii).  The important components of this requirement are the identity and value of the property distributed and the amount of the allowed secured claim.  The test is whether the value of property distributed, in this case the Mobile Home and deferred cash payments, equals the total amount of the allowed secured claim.

21st Mortgage objects to distribution of the Mobile Home and seeks an interpretation that would only allow cash payments as property distributed under the plan to pay its allowed secured claim.  [ECF No. 107.]  A review of applicable law does not support 21st Mortgage's interpretation.

### 2. The Amount of an Allowed Secured Claim Is Determined Pursuant to § 506(a)(2).

The amount of the allowed secured claim of 21st Mortgage is not an issue.  The Opinion that denied confirmation of the First Amended Plan recognized the amount of the allowed secured claim is determined pursuant to § 506(a).  [ECF No. 94 at 4-6.]  Personal property, such as the Mobile Home, is assigned its replacement value pursuant to § 506(a)(2).  [*Id.*]  The statute is clear and additional analysis is not required.  *See also infra* Part II.D.2 (discussing use of the § 506(a) valuation).

The parties agreed that the allowed secured claim has a value of $58,500.00 in the Agreed § 506(a) Valuation Order.  The order denying confirmation of the First Amended Plan suggested it was not fair to hold 21st Mortgage to the agreed valuation [ECF No. 94 at 7-8], but the analysis in this Opinion allows a conclusion that accepting the parties' agreed value causes no harm to either party.  The allowed secured claim is based on § 506(a) and is not affected by the § 1322 or § 1325 analysis addressed herein.  If any party disagrees, the denial of

confirmation of the Second Amended Plan provides additional time to raise any issues with this conclusion.

### 3. A Debtor May Distribute Non-Cash Property to Pay an Allowed Secured Claim.

Debtors have attempted to transfer non-cash assets as payment for an allowed claim in chapter 11, chapter 12, and chapter 13 cases with mixed results. The property transferred in satisfaction of a secured claim is usually real property, so the plan is referred to as a "dirt-for-debt" plan. *See, e.g., In re Sagendorph II*, No. 14-41675-MSH, 2015 WL 3867955, at *5 (Bankr. D. Mass. June 22, 2015), *rev'd sub nom. Wells Fargo Bank, N.A. v. Sagendorph (In re Sagendorph II)*, 562 B.R. 545 (D. Mass. 2017) (discussing "dirt for debt" proposals in chapter 11 and 13); *In re Donahue*, 231 B.R. 865, 870-71 (Bankr. D. Vt. 1998), *rev'd sub nom. Tatko v. Donahue (In re Donahue)*, 232 B.R. 610 (D. Vt. 1999) (discussing whether an "eat dirt" plan is permissible in chapter 13). A transfer of personal property, like the Mobile Home, raises the same questions, so this Opinion refers to a "property-for-debt" plan. A property-for-debt plan becomes more complicated when the property distributed is collateral for the claim or the transfer only pays part of the claim.

The Bankruptcy Code allows a property-for-debt chapter 13 plan. Section 1325(a)(5)(B)(ii) does not contain any limitations on the word property, which is generally given broad meaning in any Bankruptcy Code analysis. *See, e.g.*, *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) (§ 541(a)(1) includes all property made available to the debtor by the Bankruptcy Code); *Triad Int'l Maint. Corp. v. S. Air Transp., Inc. (In re S. Air Transp., Inc.)*, 511 F.3d 526, 534 (6th Cir. 2007) (the definition of property of the estate is "very broad" and included the right to possession). There is no reason to narrow the interpretation of property

11

when it is used in § 1325(a)(5)(B)(ii).  *See, e.g., In re Cochran*, 555 B.R. 892, 899 (Bankr. M.D. Ga. 2016) ("The language of § 1325(a)(5)(B) indicates that the property distributed on account of a claim need not be of a singular type and need not be made in a singular manner."); *In re Stockwell,* 33 B.R. 303, 305 (Bankr. D. Or. 1983) ("The term "property', as used in subsection (B), is sufficiently broad to include cash or any other type of property.").

The Second Circuit confirmed this conclusion when it analyzed a property-for-debt plan under chapter 12.  *First Brandon Nat. Bank v. Kerwin (In re Kerwin)*, 996 F.2d 552 (2d Cir. 1993).  The Second Circuit recognized that § 1225(a)(5) is based on § 1325(a)(5) and they are similar in all material respects.  *Id.* at 558.   The court then determined that, although "property" in subpart (B)(ii) is not defined, "use of that term suggests an expansive understanding of what may be transferred in satisfaction of a secured creditor's claim."  *Id.*

Other provisions in chapter 13 of the Bankruptcy Code support a broad interpretation.  Section 1325(a)(5)(B)(iii) permits treatment of a secured claim through deferred cash payments; it does not require them.  Subpart (B)(iii) only applies "if" the distributed property is "in the form of periodic payments," suggesting there are other alternatives.   11 U.S.C. § 1325(a)(5)(B)(iii).

Also, both § 1322(b)(8) and § 1322(b)(9) contemplate a plan that proposes distribution of property.  Section 1322(b)(8) provides that a plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or the property of the debtor."  11 U.S.C. § 1322(b)(8).  *See also In re Sagendorph II*, 562 B.R. at 555 (payment from property of the estate or property of the debtor is permitted by § 1322(b)(8)).  Section 1322(b)(9) states that vesting of property of the estate may be in "any entity" on confirmation.  11 U.S.C. § 1322(b)(9).  *See also Sagendorph,* 562 B.R. at 555 (the plain meaning of § 1322(b)(9) allows a debtor to propose a plan that vests property in any entity); *Selene Finance LP v. Brown (In re Brown)*, 563

12

B.R. 451, 456 (D. Mass 2017) (section 1322(b)(9) permits a debtor to vest property in entities other than the debtor even without a creditor's consent); *In re Sherwood*, No. 15-10637 (JLG), 2016 WL 355520, at * 7 (Bankr. S.D.N.Y. Jan. 28, 2016) (section 1322(b)(9) allows title to vest in other entities).

The cases that have denied a property-for-debt plan are almost exclusively in the context of surrender under § 1325(a)(5)(C). *See, e.g., Sagendorph,* 562 B.R. at 555; *HSBC Bank USA, N.A. v. Zair (In re Zair)*, 550 B.R. 188, 195-202 (E.D.N.Y. 2016)*; In re Tosi,* 546 B.R. at 493. These cases are distinguishable because they do not consider distributing property pursuant to § 1325(a)(5)(B) and do not fully explore application of that subpart. Only one case was found that squarely addressed, and denied, an attempt to distribute part of the creditor's collateral under § 1325(a)(5)(B). *In re Lemming*, 532 B.R. 398 (Bankr. N.D. Ga. 2015).

The court in *Lemming* decided § 1322(b)(8) was ambiguous and then imposed conditions that would require the creditor's acceptance of the proposal. The finding of an ambiguity is not not persuasive, so there is no need to look outside the plain language of § 1322(b)(8) or read into the statute conditions that are not in its text. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (holding where a statute's language is plain, the function of the courts is to enforce it according to its terms); *see also* Eugene R. Wedoff, *Underwater Homeowner to Uncooperative Mortgage Lender Take My Home, Please! Does Dirt for Debt Work in Chapter 13?,* 36 BANKR. LAW LETTER NL 1, Sept. 2016 (Thomson Reuters) (discounting most of the arguments in *Lemming*). Further, imposing conditions that show the creditor accepts the treatment is not required. That condition is already found in § 1325(a)(5)(A).

Also, Congress has shown that it will limit a payment obligation in the Bankruptcy Code to cash-only when that is the intention. *See, e.g.,* 11 U.S.C. § 1322(a)(2) (another part of § 1322 requires "deferred cash payments" for administrative claims); 11 U.S.C. § 361(a) (requiring a "cash payment or periodic cash payments" for adequate protection); 11 U.S.C. § 1129(a)(9) and § 1129(b)(2)(A)(i)(II) (requiring cash payments in the chapter 11 context); 11 U.S.C. § 1205(b)(1) and § 1222(a)(2) (requiring cash payments in the chapter 12 for adequate protection and administrative claims). Congress did not limit § 1322(b)(8) in the same way, so there is no support for adding conditions that would require cash payments. *See* 124 Cong. Rec. H11, 107 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards), reprinted in 1978 U.S. Code Cong. & Admin. News 6481-82; 124 Cong. Rec. S17, 423 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini), reprinted in 1978 U.S. Code. Cong. & Admin. News 6550-51 (legislative history supports use of any property to pay an allowed secured claim).

There is no restriction on the type of property that a debtor may use to pay an allowed secured claim and one is not read into any statute. Use of the term "property" in chapter 13 is not limiting; it broadly describes any distributed asset in payment of the value of an allowed secured claim. The next significant issue is the value of the "property to be distributed" to determine if it is enough to pay the amount of the allowed secured claim.

### D. The Second Amended Plan Does Not Distribute Property Equal to the Value of the Allowed Secured Claim of 21st Mortgage.

#### 1. Valuation Protects Secured Creditors When Property Is Distributed Pursuant to § 1325(a)(5)(B)(ii).

A debtor should have as much flexibility as possible when structuring a plan of reorganization. "The legislative history of chapter 13 suggests that Congress was concerned with the 'flexibility' of the debtor in the formulation of a chapter 13 plan." *In re Baldwin*, 97 B.R.

965, 967-68 (Bankr. N.D. Ind. 1989). *See also In re Kunkelman*, 417 B.R. 489, 495 (Bankr. N.D. Ohio 2009) ("Chapter 13 plans of reorganization allow for flexibility.") The way to allow flexibility and address the concerns with property-for-debt plans is through the valuation process:

> Secured lenders in this and similar cases receive their primary protection through the valuation process. When distributions occur under (B), the property is valued by the bankruptcy court as of the effective date of the plan and must be found to be "not less than the allowed amount of [the secured lender's] claim." *See* § 1225(A)(5)(B)(ii). The language in (B)(i) relating to a holder retaining its lien guarantees that distribution is carried out under the plan. It does not guarantee any ultimate sale price of property. The guarantee that the secured creditor will receive the full value of its claim is provided by § 1225(a)(5)(B)(ii)'s requirement that the property to be distributed be valued at the amount of the creditor's claim. In that way the statutory scheme protects the secured creditor mainly through the valuation process.

*Kerwin*, 996 F.2d at 559.

Valuation is a means to resolve the problems with property-for-debt plans. The costs of sale and ownership are factored into the value of the property distributed. Some assets, like environmentally contaminated properties,[2] will have little or no value to support a reduction in the amount of the allowed secured claim. Therefore, the risk of forced vesting that has troubled some courts is not an issue because a debtor must always prove that the value of the property transferred at least equals the value of the allowed secured claim.

The debtor has the initial burden of proof, so the cost of the valuation will limit most debtor's ability to propose property-for-debt plans. *See In re Caudill*, No. 18-70102, 2018 WL 3601834, at *1 (Bankr. E.D. Ky. July 25, 2018); *In re Neace*, No. 16-60861, 2017 WL 75747, at *2 (Bankr. E.D. Ky. Jan. 6, 2017). A simple appraisal may work for a house and lot, but a multi-acre, mixed use tract that is only partially conveyed in payment of a debt will require significant

---

[2] Environmentally contaminated properties are an extreme example. Many contaminated properties have a negative value. This is often the case in coal bankruptcies. An attempt to force a transfer of valueless property fails financially and likely indicates bad faith.

15

and costly proof. Transfer of a business would require analysis of the types of assets conveyed and valuations of parts or the whole. Also, it is possible that "the property sought to be distributed under (B) may be so difficult to value that it may not be transferred under (B) because (B)(ii)'s valuation requirement could not be met." *Kerwin,* 996 F.2d at 559.

Valuations of mobile homes are common in this district and do not pose any significant difficulty. The problem with the Second Amended Plan is the Debtor's assumption that the value of the property distributed pursuant to § 1325(a)(5)(B)(ii) is the same as the value assigned to the Mobile Home to arrive at the value of the allowed secured claim pursuant to § 506(a). The valuation of an allowed secured claim required by § 506(a)(2) does not set the value of personal property distributed under § 1325(a)(5)(B)(ii) to pay that claim.

> **2. Valuation of an Allowed Secured Claim Using § 506(a)(2) Does Not Provide the Value of Personal Property Distributed in Payment of that Allowed Secured Claim under § 1325(a)(5)(B)(ii).**

The allowed claim of 21st Mortgage is secured to the extent of the value of the underlying collateral. 11 U.S.C. § 506(a). The Mobile Home is personal property under Kentucky law, so § 506(a)(2) requires use of replacement value to determine the secured amount of the allowed claim. The Debtor and 21st Mortgage agreed the Mobile Home has a value of $36,000.00 for purposes of § 506(a) and the Real Estate is valued at $22,500.00, for a total allowed secured claim of $58,500.00. This calculation addresses one component of § 1325(a)(5)(B)(ii), "the allowed amount of such claim."

But the replacement value standard is not the appropriate value for the Mobile Home as property distributed under § 1325(a)(5)(B)(ii) because § 506(a)(2) is premised on retention of the asset by the debtor. The genesis of § 506(a)(2) explains why that valuation is not the same as the value of property distributed pursuant to § 1325(a)(5)(B)(ii).

The Supreme Court held in *Rash* that replacement value is the appropriate valuation standard for a vehicle a debtor intends to retain and pay through deferred cash payments during the life of the plan.  520 U.S. at 962.  The court in *Rash* reached this conclusion based on the directive in what is now § 506(a)(1) that valuation is determined "in light of the purpose of the valuation and of the proposed disposition or use of such property."  *Id.*  Replacement value is a logical valuation standard for a debtor that intends to retain an asset because a sale and the related costs are avoided.  *Id.* at 963.

Congress agreed and made replacement value the applicable valuation standard for personal property when it enacted § 506(a)(2) in 2005.  "Since the enactment of BAPCPA, most courts have interpreted the first sentence of § 506(a)(2) as codifying the Supreme Court's decision in *Rash*."  *In re Scott*, 437 B.R. 168, 172-73 (Bankr. D. N.J. 2010).  Replacement value is not appropriate, however, when evaluating personal property distributed as payment.

Distribution will bring along costs that are not an issue when a debtor retains the collateral, such as fees related to sale and the costs of ownership pending liquidation.  These expenses directly affect the value of the personal property distributed, so consideration is required to confirm the "property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim."  11 U.S.C. § 1325(a)(5)(B).

### 3. The Debtor's Proposal to Transfer Possession of the Mobile Home Is Not A Distribution of Property Worth $36,000.00.

The allowed secured claim is $58,500.00.  *See supra* Parts I.A and II.C.2.  The Debtor assigns a value of $36,000.00 to the Mobile Home as an immediate distribution, leaving $22,500.00 of the allowed secured claim payable through deferred cash payments with interest.

17

The record requires a conclusion that the distribution of the Mobile Home by transfer of title is not worth $36,000.00.

The § 506(a)(2) valuation omits expenses that affect the value of the Mobile Home for distribution purposes. The distribution valuation must consider costs of liquidation, such as a title examination, exercise of Uniform Commercial Code or other state law rights, and a broker's fee. 21st Mortgage would also incur costs of ownership while it is preparing to sell the Mobile Home, such as insurance, relocation expenses, and security.

The agreed § 506(a)(2) value of the Mobile Home as part of the determination of the allowed secured claim does not consider all factors necessary to value the Mobile Home for purposes of distribution in payment of the allowed secured claim. Although this decision does not set a value for the Mobile Home, the record allows a conclusion that the value of the Mobile Home is less than the amount proposed by the Debtor because it omits key components that reduce the property's value.

Therefore, 21st Mortgage's objection is sustained, and the Second Amended Plan is not confirmable.

### III. CONCLUSION.

The Debtor may propose a property-for-debt plan, but the value of the property transferred at confirmation, *i.e.*, the Mobile Home and deferred cash payments, is less than the allowed secured claim of 21st Mortgage. This means the remaining allowed secured claim paid through deferred cash payments in Section II.A.2 of the plan is not sufficient. The result is a plan that does not satisfy the requirement that the "property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii).

Case 17-30370-grs    Doc 110    Filed 04/08/19    Entered 04/08/19 17:49:51    Desc Main
Document      Page 19 of 19

WHEREFORE, it is ORDERED that the Creditor 21st Mortgage Corporation's Amended Objection to Confirmation of Plan [ECF No. 107] is SUSTAINED and confirmation of the Debtor's Second Amended Chapter 13 Plan [ECF No. 99] is DENIED.  Further, this matter shall come before the Court for **a status conference** to determine if the Debtor believes it can propose a confirmable plan **at 10:00 a.m. on April 18, 2019, in the U.S. Bankruptcy Court, Second Floor Courtroom, 100 E. Vine Street, Lexington, Kentucky**.  If the Debtor is unable to propose a confirmable plan, the case will be dismissed.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Monday, April 8, 2019**
(grs)